**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Morton Robert Berger, | CIV 09-2689-PHX-DGC (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

Petitioner Morton Robert Berger, who is represented by attorneys Herbert L. Ely and Daymon B. Ely, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents have filed an Answer (Doc. 11), and Petitioner has filed a Reply (Doc. 20).

## BACKGROUND[1]

On August 1, 2002, the Maricopa County Grand Jury returned an indictment charging Petitioner with 35 counts of sexual exploitation of a minor, class 2 felonies and dangerous crimes against children, in violation of A.R.S. §§ 13-3553, 13-3551, and 13-604.01. (Exh. A, Item 1.) The indictment alleged that Petitioner committed these crimes "on or about the 6th day of June, 2002," by knowingly receiving, purchasing, or possessing "any visual depiction in which a minor under fifteen years of age is engaged in exploitive exhibition or other sexual conduct." (Id.)

---

[1] Unless otherwise noted, the following facts are derived from the Exhibits submitted with Doc. 11 – Respondents' Answer.

On January 28, 2003, the first day of Petitioner's trial, the State moved to dismiss 15 of the original 35 counts of the indictment (Counts 2, 7, 10-12, 15-17, 24, 26, 28-30, 33, and 34). (Exh. B, Item 65; Exh. E at 3-5.) The parties stipulated to renumbering the remaining charges Counts 1 through 20. (Exh. A, Items 62-63; Exh. B, Item 65; Exh. F at 2-3.) During the ensuing 2-day trial, the State presented the following evidence.

At approximately 8:30 p.m. on June 6, 2002, Phoenix Police Detective Chris Curley and FBI Agent Hancock conducted a "knock and talk" at Petitioner's residence to investigate whether Petitioner had downloaded any child pornography from various Internet sites.[2] (Exh. F at 26, 37-40, 46, 51-53, 55.) The two officers identified themselves, informed Petitioner that they were investigating allegations that he possessed child pornography, and asked Petitioner for consent to search for contraband inside his residence. (Id. at 37-40, 55-57.) Petitioner agreed, admitted Detective Curley and Agent Hancock into his house, and told Curley that he had used his computers to access Internet child-porn sites. (Id. at 40, 56-57.) Based upon Petitioner's admissions, Curley obtained a search warrant. (Id. at 40-41, 58-59.)

While his fellow officers were executing the search warrant, Detective Curley read Petitioner his Miranda rights and obtained a waiver thereof. (Id. at 60-65.) Petitioner told Curley that he had "downloaded some things that he was not proud of, and was not sure if he should have downloaded them or not." (Id. at 66.) Petitioner identified the two home computers that he had used to access child pornography. (Id. at 66-68.)

Petitioner admitted that he had downloaded images of young girls involved in sexual conduct from "all over" the web. (Id. at 72-74.) Petitioner acknowledged downloading "questionable material" only a couple days earlier, but could not recall anything about the

---

[2] According to the record, another law enforcement agency provided the Phoenix Police Department with the names, addresses, and credit card numbers of customers from a list seized from an Internet child pornography ring in Dallas, Texas, during "Operation Avalanche." (Exh. A, Items 8, 25, 51.) The trial court did not allow the State to introduce evidence regarding this investigation, but instead allowed Detective Curley to testify that he had obtained Petitioner's name and address from "a list dealing with child pornography." (Exh. B, Item 65; Exh. E at 6-8.)

material.  (Id. at 74.)  While searching Petitioner's bedroom closet, the police found a newspaper clipping of an article reporting the arrest of a Glendale police officer for possessing child pornography.  (Id. at 85-89.)

Besides Petitioner's computers, floppy disks, and CDR (a device used to record images onto computer disks), the police seized three 3-ring binders, which contained numerous downloaded and sexually-explicit photographs of children; Petitioner wrote his name on the inside cover of one of these three albums, all of which were seized from the closet of his computer room.  (Id. at 77, 83-85, 89-100.)

In all, "the trial evidence established that [Petitioner] possessed numerous videos and photo images of children, some younger than ten years old, being subjected to sexual acts with adults and other children, including images of sexual intercourse and bestiality.  The jury also heard testimony indicating that, from 1996 to 2002, [Petitioner] had downloaded computer files containing child pornography; he had identified several 'favorite' websites with titles indicating they provided child pornography; he had recently viewed contraband material; and he had created both computer and hard copy filing systems to maintain his collection."  State v. Berger, 134 P.3d 378, 380 (Ariz. 2006).

The trial court gave the jury the following instruction defining the elements of his charged offenses: "A person commits the crime of Sexual Exploitation of a Minor by knowingly receiving and/or possessing any visual depiction in which a minor is engaged in exploitative exhibition or other sexual conduct."  (Exh. A, Item 67 at 6; Exh. G at 62.)  Based on the aforementioned evidence, the jury convicted Petitioner of all 20 counts and issued a special verdict finding that the depicted children were less than 15 years old.  (Exh. A, Items 71-90; Exh. B, Item 92.)

Prior to trial, on October 16, 2002, Petitioner filed with the trial court a pleading captioned, "Motion to Hold Statute [A.R.S. § 13-3553] Unconstitutional as Cruel and Unusual Punishment."  (Exh. A, Item 30.)  Petitioner based this motion on the Eighth Amendment to the United States Constitution and Article II, Sections 4 and 15 of the Arizona

Constitution. (Id.) Petitioner's motion recited the sentencing ranges for possession of child pornography in 50 other state and federal jurisdictions, as well as the sentencing ranges for other crimes in Arizona. (Id.) On October 22, 2002, the State filed its response opposing Petitioner's constitutional challenge as both premature and lacking merit. (Exh. A, Item 32.) The court heard argument on December 13, 2002, but ultimately decided to defer ruling because Petitioner had not been convicted of any of the charged offenses. (Exh. B, Item 50; Exh. D at 9-20.)

Because the guilty verdicts made Petitioner's pretrial constitutional challenge to A.R.S. § 13-3553 ripe, the trial court delayed sentencing until it had ruled on whether the statute required the imposition of prison terms violating the Eighth Amendment's prohibition on cruel and unusual punishment. Following the standard set forth in State v. DePiano, 926 P.2d 494 (Ariz. 1996), the trial court denied Petitioner's motion because it found no gross disproportionality between the prescribed statutory sentencing range and Petitioner's criminal conduct. (Exh. B, Item 94.)

The trial court subsequently imposed 20 mitigated, 10-year prison terms, and ordered the terms to run consecutive to each other, as mandated by A.R.S. §§ 13-604(K) and -3553. (Exh. B, Item 98.)

On March 7, 2003, Petitioner filed a timely notice of appeal from the trial court's judgments and sentences. (Exh. A, Item 99.) On September 3, 2003, Petitioner filed with the Arizona Court of Appeals an opening brief raising five arguments, including the claim that he received "a life sentence" in violation of the Eighth Amendment and Arizona's corresponding constitutional provisions, as a result of A.R.S. §§ 13-3553 and -604.01's provisions mandating that he serve his twenty 10-year prison terms consecutively. (Exh. I at 1, 4-12.) Petitioner compared the punishment for his crime against the sentences statutorily available for other crimes in Arizona, and against the sentences that he could have received in other states for committing the same crime within those jurisdictions. (Id.) Petitioner appended to his brief photocopies of the child pornography and sentencing statutes

from all 50 states.  (Exh. I, Appendices.)  Based upon his intra- and inter-jurisdictional comparisons and his self-characterization as a non-recidivist who merely possessed contraband images, Petitioner maintained that his sentences constituted cruel and unusual punishment.  (Exh. I at 4-12.)

On November 17, 2003, the State filed its answering brief, wherein it argued that: (1) Petitioner incorrectly framed the issue by contending that he was given a life sentence, because the Eighth Amendment's analysis focuses upon the sentence a defendant receives for each crime, not the aggregate total of his prison terms; (2) Petitioner's intra- and inter-jurisdictional analyses were irrelevant because his 10-year prison term was not grossly disproportionate to the serious crime of sexual exploitation of a minor; and (3) alternatively, extended Eighth Amendment analysis did not demonstrate that Petitioner's sentences were cruel and unusual punishment.  (Exh. J at 11-21.)

On January 12, 2004, Petitioner filed his reply brief reiterating his prior arguments and citing the Arizona Supreme Court's recent decision in State v. Davis, 79 P.3d 64 (Ariz. 2003), which overruled DePiano, the case upon which the trial court relied in rejecting his Eighth Amendment challenge prior to sentencing.  (Exh. B, Item 94; Exh. K at 1-7.)

On December 14, 2004, a divided panel of the Arizona Court of Appeals issued an opinion in which the majority found Petitioner's sentences did not violate the Eighth Amendment and therefore upheld his consecutive prison terms.[3]  (State v. Berger (hereinafter "Berger"), 103 P.3d 298 (Ariz. Ct. App. 2004), vacated in part by State v. Berger (hereinafter "Berger II"), 134 P.3d 378 (Ariz. 2006)).

On March 11, 2005, Petitioner filed with the Arizona Supreme Court a petition for review raising only one issue:

> Are the cruel and unusual punishment clauses of the Arizona and Federal constitutions violated when a 52 year old high school teacher with no criminal record is sentenced to a 200 year flat-time sentence with no possibility of early

---

[3] The court unanimously rejected Petitioner's other claims.  See Berger, 103 P.3d at 300-02.

- 5 -

release upon his conviction of possession of child pornography and in the absence of any actual sexual misconduct with children[?]

(Exh. M at 1.)

On April 8, 2005, the State filed its opposition to Petitioner's request for review. (Exh. N.) On January 6, 2006, the Arizona Supreme Court granted review and invited supplemental briefing. (Exh. O.) On January 26, 2006, Petitioner filed his supplemental brief, which was limited to reporting the sentences imposed in 10 other Arizona criminal cases for crimes other than child pornography possession, and an appendix of supplemental authority containing an "updated survey of state child pornography statutes." (Exh. P.) On the same date, the State filed its supplemental brief. (Exh. Q.) On February 6, 2006, the State filed supplemental citations of authority, to report that 14 other states had recently enacted legislation increasing the punishment for possessing or receiving child pornography images. (Exh. R.)

On May 10, 2006, in a 4-1 decision, the Arizona Supreme Court held that: (1) the Eighth Amendment analysis for consecutive prison terms focuses on the sentence imposed for each specific crime, not the aggregate or cumulative length of the defendant's sentences; (2) the 10-year prison term that Petitioner received for each count was not grossly disproportionate to the crime of sexual exploitation of a minor; and (3) his sentences therefore did not constitute cruel and unusual punishment. (Berger II, 134 P.3d at 383-88.)

In its Opinion, the court first examined the legislative history and purpose of A.R.S. § 13-3553. See Berger II, 134 P.3d at 382-83. The majority began by noting, "[i]t is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling,'" and that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." Id. at 382 (quoting Osborne v. Ohio, 495 U.S. 103, 109 (1990)). The majority acknowledged that the victims of child pornography continue to suffer substantial harm long after the material's production. See id. (citing United States v. Sherman, 268 F.3d

539, 547 (7th Cir. 2001), for the proposition that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters").

Thus, the court determined that legislation criminalizing the possession of child pornography is "tied directly to state efforts to deter its production and distribution," seeks to "stamp out this vice at all levels in the distribution chain," and encourages the destruction of these materials. Id. at 382 (quoting Osborne, 495 U.S. at 110). The court further found that "[t]he goal of combating the sexual abuse and exploitation inherent in child pornography animates Arizona's severe penalties for the possession of such material." Id. The court then recounted the historical development of the specific legislation under review stating, in pertinent part:

> In 1978, the Arizona legislature determined that existing state laws were inadequate and enacted legislation specifically aimed at the child pornography industry. The new law, the predecessor to A.R.S. sections 13-3551 to -3553, declared its purposes to include protecting children from sexual exploitation and to "prevent any person from benefiting financially or otherwise from the sexual exploitation of children." 1978 Ariz. Sess. Laws, ch. 200, § 2(B)(1), (3). The legislature specifically identified a series of harms to child victims, including the use of the material by defendants in luring new victims and the fact that such materials cause continuing harm to the children depicted. Id. § 2(A)(5)-(6).

> In 1983, lawmakers extended this criminal ban to include possession itself, an amendment that prosecutors claimed would aid in prosecuting child molesters. 1983 Ariz. Sess. Laws, ch. 93; *Hearing on H.B. 2127 Before the H. Comm. on Judiciary*, 36th Legis., 1st Reg. Sess. 2 (Ariz. 1983) (comments of Elizabeth Peasley, Pima County Attorney's Office). Such legislation also recognizes the fact that producers of child pornography exist due to the demand for such materials. "The consumers of child pornography therefore victimize the children depicted ... by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects." *United States v. Norris*, 159 F.3d 926, 930 (5th Cir. 1998) (applying federal sentencing guidelines).

> Correspondingly, the legislature soon thereafter included the possession of child pornography among crimes targeted in § 13-604.01 for enhanced sentencing as "dangerous crimes against children." 1985 Ariz. Sess. Laws, ch. 364, § 6. This legislation provides "lengthy periods of incarceration ... intended to punish and deter" "those predators who pose a direct and

continuing threat to the children of Arizona." *State v. Williams*, 175 Ariz. 98, 102, 854 P.2d 131, 135 (1993) (reviewing the legislative history of § 13-604.01).

Id. at 383.

Thereafter, the court concluded, "[g]iven this history ... the legislature had a 'reasonable basis for believing' that mandatory and lengthy prison sentences for the possession of child pornography would 'advance [] the goals of [Arizona's] criminal justice system in [a] substantial way.'" Id. (quoting Ewing v. California, 538 U.S. 11, 28 (2003)).

"Against this backdrop," the court then considered whether Petitioner's sentences are grossly disproportionate to his offenses by comparing the gravity of the offense and the severity of the punishment. See id. at 383-84. The court first rejected Petitioner's contention that he had received a "200 year flat-time sentence upon his conviction of possession of child pornography." The court stated that pursuant to statute Petitioner had been "convicted of twenty separate counts of possession of child pornography involving minors under fifteen, and he was sentenced to a ten-year term for each count ... [to] be served consecutively." Id. at 383.[4]

The court provided two additional reasons for focusing its gross disproportionality analysis "on whether a ten-year sentence [rather than the aggregate 200-year sentence] is disproportionate for a conviction of possessing child pornography involving children under fifteen." Id. at 384. The court stated that "[a] defendant has no constitutional right to concurrent sentences for two separate crimes involving separate acts," and that the "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." Id. Consequently, the court determined:

---

[4] The court noted that Petitioner did not argue in his petition for review – "[n]or could he" – that the State's charging him in twenty separate counts based on each image was improper. Pursuant to statute, the court stated that each count was based on a different video or photo image, the images involved some 15 different child victims, and Petitioner had accumulated the images over a 6-year period. See Berger II, 134 P.3d at 383. Similarly, Petitioner makes no such argument in the instant habeas petition.

Thus, if the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in the aggregate. *See Jonas*, 164 Ariz. at 249, 792 P.2d at 712. This proposition holds true even if a defendant faces a total sentence exceeding a normal life expectancy as a result of consecutive sentences. *See, e.g.*, *Lockyer*, 538 U.S. at 74 n.1 [] (rejecting, in context of federal habeas review, dissent's argument that two consecutive sentences of twenty-five years to life for separate offenses were equivalent, for purposes of Eighth Amendment analysis, to one sentence of life without parole for thirty-seven-year-old defendant); *United States v. Beverly*, 369 F.3d 516, 537 (6th Cir. 2004); *Taylor*, 160 Ariz. at 422, 773 P.2d at 981.

Id. at 384.

Ultimately, having analyzed principles established by prior decisions, the court found that a 10-year sentence was not grossly disproportionate to Petitioner's crime of knowingly possessing child pornography depicting children younger than 15. See id. at 384. The court further supported its determination by observing that "only once in the past quarter century has the Supreme Court sustained an Eighth Amendment challenge to the length of a prison sentence." Id. (citing Solem v. Helm, 463 U.S. 277, 279-82 (1983)). The court distinguished Solem from the instant case on two grounds: (1) in Solem, the defendant was sentenced to life imprisonment without parole, "the most severe punishment the State could have imposed," for the "quite minor crime" of "uttering a 'no account' check," "one of the most passive felonies a person could commit," id. (quoting Solem, 463 U.S. at 296-97); and (2) Solem "did not involve a mandatory sentence, but instead concerned a judge's discretionary decision to impose the maximum authorized sentence [and] [t]hus ... did not implicate the 'traditional deference' that courts must afford to legislative policy choices when reviewing statutorily mandated sentences," id. at 385.

After reciting the overwhelming evidence of Petitioner's large-scale, deliberate, and long-term acquisition and preservation of child pornography, the court concluded that Petitioner's sentences were supported by the evidence and were justified by the State's interest in deterring the production and possession of child pornography. See id.

After receiving a stay of the issuance of the mandate in his case, Petitioner filed a petition for writ of certiorari with the Supreme Court. (Exh. A, Item 116; Exh. T; Exh. U; Exh. V.) The State opposed Petitioner's petition. (Exh. W.)

On February 26, 2007, the Supreme Court denied the petition. (Exh. X). On March 15, 2007, the Arizona Supreme Court issued its order and mandate. (Exh. A, Items 125, 128.)

On April 2, 2007, Petitioner filed a pro per notice of post-conviction relief. (Exh. A, Item 129.) On May 14, 2007, Herbert Ely entered his appearance on Petitioner's behalf and replaced the assigned deputy public defender on June 6, 2007. (Exh. A, Items 131, 133.) On June 26, 2007, Petitioner filed his Rule 32 petition for post-conviction relief. (Exh. A, Item 137.) In his petition, Petitioner renewed his Eighth Amendment challenge to his sentences, argued that A.R.S. § 13-3553 was unconstitutional because its mandatory consecutive sentencing provisions violated the separation-of-powers doctrine and produced cruel and unusual punishments, and alleged that his trial attorney was ineffective for not asking the trial judge to invoke A.R.S. § 13-603(L)'s executive clemency provision. (Id. at 2-24.) Petitioner also claimed entitlement "to an evidentiary hearing to show the disparity between his crime and the sentence, and to an individualized hearing to demonstrate this to the Court." (Id. at 2.) Besides attaching letters from Petitioner's friends and family to the Rule 32 petition, his attorney appended a copy of a psychological evaluation report prepared on December 12, 2002, by Dr. Michael Bayless, who examined Petitioner before his trial, and charts summarizing the child pornography sentencing statutes in other jurisdictions. (Id., attachments 2, 4.)

On November 30, 2007, the State filed its response, wherein it argued that: (1) all of Petitioner's claims, except his allegations of ineffective assistance of counsel, were precluded by Arizona Rule of Criminal Procedure 32.2 because they were either previously addressed on the merits or waived; and (2) Petitioner's ineffectiveness claim lacked merit. (Exh. A, Item 153.) Petitioner filed his reply on December 17, 2007. (Exh. A, Item 156.)

On January 22, 2008, the trial judge denied relief in a minute entry order that reads as follows:

Defendant has raised a number of issues as follows:

First, Defendant seeks an Evidentiary Hearing in order to show the disparity between his crimes and the sentence received in order to show that the sentencing scheme is unconstitutional. In addition, Defendant urges that his trial counsel was ineffective for failing to argue that the sentence scheme was cruel and unusual in violation of the Eighth Amendment.

The Court notes that the issue of the excessive sentencing scheme was raised at the trial court level in Defendant's Motion to Dismiss, filed April 23, 2003. Arguments were made at that time and Defendant's Motion to Dismiss was denied.

THE COURT FINDS that the disparity of the sentence to the crimes committed is precluded based on the decision of the Court of Appeals. Further, argument regarding the gross disproportionality issue has been raised previously and was denied. On these grounds,

IT IS ORDERED denying Defendant's Petition for Post-Conviction Relief.

In addition, Defendant argues that trial counsel was ineffective for failing to request relief pursuant to A.R.S. § 13-603(L), allowing for Defendant to seek commutation of his sentence by the Board of Executive Clemency. However, this matter was considered independently by this judge, on her own, prior to the imposition of sentence. Even without the issue having been raised by defense counsel, this Court again addressed the issue and determined that [ ] relief under A.R.S. §13-603(L) was not appropriate. Therefore, the outcome of Defendant's sentence would not have been different, even if defense counsel had raised the issue. On this ground,

IT IS ORDERED denying Defendant's Petition for Post-Conviction Relief.

Finally, Defendant argues that the sentencing scheme under which Defendant was sentenced must be found to be unconstitutional as a violation of the Separation of Powers Doctrine. This issue was not raised on appeal, and therefore, is precluded. If not precluded, however, based on a possible claim of ineffective assistance of appellate counsel, the Court finds no legal support for this argument. On this basis,

IT IS ORDERED denying defendant's Petition for Post- Conviction Relief.

As set forth above,

THE COURT FINDS that Defendant's claims in his Petition for Post-Conviction Relief are either precluded or have no valid legal basis. Accordingly,

IT IS ORDERED denying all claims raised in Defendant's Petition for Post-Conviction Relief.

(Exh. B, Item 159 at 1-2.)

On February 20, 2008, Petitioner filed with the Arizona Court of Appeals a petition for review reiterating his claims alleging violations of the Eighth Amendment, the Separation of Powers Doctrine, and the Sixth Amendment right to effective counsel. (Exhs. X, Y.) On December 29, 2008, the Arizona Court of Appeals summarily denied review. (Exh. Z.)

On January 29, 2009, Petitioner filed with the Arizona Supreme Court a petition for review that raised the same arguments as below. (Exh. AA.) On September 22, 2009, the Arizona Supreme Court summarily denied review. (Exh. BB at 20.)

On December 28, 2009, Petitioner filed the instant Petition for Writ of Habeas Corpus raising one ground for relief – that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment. Specifically, Petitioner asserts that "the 200-year sentence imposed on Petitioner for possession of 20 images of child pornography on his computer, without the possibility of 'probation, pardon or release,'" leads to an inference of gross disproportionality. Citing United States v. Meiners, 485 F.3d 1211 (9th Cir. 2007), Petitioner contends that he was not convicted of distributing or advertising child pornography and, therefore, states that there was no evidence that his crimes affected society.

Petitioner's argument incorporates two separate ideas. Petitioner, citing State v. Davis, references the "cumulative 200-year sentence" and attacks the consecutive nature of the sentences imposed, which Petitioner suggests is "*the* cause of disproportionality." Petitioner also claims that, to the extent the Court focuses on the sentence imposed for each specific crime rather the aggregate, a sentence of 10 years is grossly disproportionate to the crime of sexual exploitation of a minor. Petitioner requests a hearing so that he may call (1) a penologist to give testimony regarding the sentences imposed for other crimes in Arizona

and the sentences imposed in other jurisdictions for possessing child pornography; and (2) other expert and lay witnesses to present testimony regarding Petitioner's character and lack of any predilection to molest or sexually abuse children.

Respondents have filed an Answer (Doc. 11), and Petitioner has filed a Reply (Doc. 20).

## DISCUSSION

In their Answer, Respondents contend that this Court should deny habeas relief because the Arizona Supreme Court's opinion upholding Petitioner's sentences against his Eighth Amendment challenge was a decision that was neither contrary to, nor an unreasonable application of, clearly established law.

Pursuant to the AEDPA[5] , a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an

---

[5] Antiterrorism and Effective Death Penalty Act of 1996.

'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

## A.     Consecutive Nature of the Sentences Imposed

In considering his Eighth Amendment challenge, Petitioner asserts that "this Court should consider the total 200-year sentence," and cites State v. Davis to specifically attack the consecutive nature of the sentences imposed.

The Eighth Amendment analysis "focuses on the sentence imposed for each specific crime, not on the cumulative sentence." United States v. Aiello, 864 F.2d 257, 265 (2nd Cir. 1988).  As the Supreme Court has made clear, if the defendant

> has subjected himself to a severe penalty, it is simply because he has committed a great many such offenses.  It would scarcely be competent for a person to assail the constitutionality of the statute prescribing a punishment for burglary on the ground that he had committed so many burglaries that, if punishment for each were inflicted on him, he might be kept in prison for life.

O'Neil v. State of Vermont, 144 U.S. 323, 331 (1892).

Nonetheless, Petitioner contends that pursuant to State v. Davis, the consecutive nature of his sentences should have been considered in the Eighth Amendment analysis.  The Court disagrees.  Davis is distinguishable from the instant matter.

In Davis, the Arizona Supreme Court vacated four consecutive 13-year sentences imposed on a 20-year-old man of below average intelligence convicted of having uncoerced sex at different times with two 14-year-old girls.  See 79 P.3d at 68.  The court "effectively concluded that it could not reconcile the particular sentences imposed with any reasonable sentencing policy it could attribute to the legislature."  Berger II, 134 P.3d at 386.  The defendant in Davis, who had no prior criminal record, was caught up in the "broad sweep" of a statute that made "no distinction between the perpetrators of incest, serial pedophiles,

- 14 -

and an eighteen-year-old man engaging in sex initiated by a fifteen-year-old girlfriend." Davis, 79 P.3d at 71-72.

Analyzing its holding in Davis, the supreme court in Berger II stated:

[O]bjective facts about the offenses indicated that the defendant's conduct was at the edge of the statute's broad sweep of criminal liability. Davis was twenty years old and his maturity and intelligence fell far below that of a normal adult. *Id.* at 384-85, ¶ 36, 79 P.3d at 71-72. The girls involved not only participated willingly, but they had sought Davis out and gone voluntarily to his home. *Id.* If the girls had been fifteen or older and Davis within two years of their age, he would not have been criminally liable at all. A.R.S. § 13-1407(F). But because his conduct was "swept up in the broad statutory terms," *Davis*, 206 Ariz. at 385, ¶ 37, 79 P.3d at 72, Davis was subject to four consecutive thirteen-year sentences.

Only after concluding that objective factors about Davis's offense showed he had been caught up in the expansive reach of the statute did the court determine that the consecutive nature of his sentences was relevant to the Eighth Amendment analysis. *Id.* at 387, ¶ 47, 79 P.3d at 74. In so doing, however, the court noted that its conclusion rested on the "specific facts and circumstances of Davis's offenses," and reaffirmed that the court "normally will not consider the imposition of consecutive sentences in a proportionality inquiry ... ." *Id.* at 387-88, ¶¶ 47-48, 79 P.3d at 74-75.

The Court agrees with the Arizona Supreme Court's conclusion, finding that, in this case, Petitioner's "conduct is at the core, not the periphery, of the prohibitions of A.R.S. § 13-3553(A)(2)" and that he, unlike the defendant in Davis, cannot be characterized as someone merely "caught up" in a statute's broad sweep. Nothing in this record suggests that Petitioner's maturity and intelligence "fell far below that of a normal adult," or that the victims somehow sought out Petitioner.[6] Rather, at the time of his arrest, Petitioner was a

---

[6] The Court rejects Petitioner claim that his crimes were victimless in that he "never touched a child" and "never left the privacy of his own home in committing these crimes." As the legislative history of the statutes at issue suggest, production of the images possessed by Petitioner required the abuse of children, and Petitioner's consumption of such material cannot be disassociated from that abuse for purposes of the Eighth Amendment proportionality analysis. See generally Norris, 159 F.3d at 930 (noting, for purposes of federal sentencing guidelines, that "the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography").

52-year-old high school teacher. He did not accidentally or inadvertently encounter child pornography, but instead knowingly sought and possessed numerous items "graphically depicting sordid and perverse sexual conduct with pre-pubescent minors" over an extended period of time. The evidence further suggests that Petitioner knew what he was doing was wrong. When confronted by the police, Petitioner acknowledged that he had "downloaded some things that he was not proud of, and was not sure if he should have downloaded them or not." Additionally, in response to police questions, Petitioner admitted he had downloaded images of people under eighteen and that he believed these people were involved in sexual conduct. He also possessed a news article reporting the arrest of a Glendale police officer for possessing child pornography. Thus, considering "the specific facts and circumstances" of Petitioner's crimes, the Court finds that the supreme court's decision to not consider the imposition of consecutive sentences in a proportionality inquiry was not contrary to established federal law or based on an unreasonable determination of the facts.

In any event, even if this Court did consider Petitioner's sentence in the aggregate, the result would be the same. As this Court has previously identified in a similar matter (Welch v. Ryan, et al., CV-07-2169), the Ninth Circuit as well as many other circuits courts around the country have found that mandatory consecutive sentences do not violate the Eighth Amendment's prohibition of cruel and unusual punishment.[7]

---

[7] The circuit courts reviewing a federal statute having a substantial similarity to the Arizona statute at issue have found no Eighth Amendment violation. The federal statute provides for penalties related to the use of guns in drug trafficking. The statute provides, in pertinent part:

> [N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

18 U.S.C.A. § 924(c)(1)(D)(ii). The Second, Third, Fourth, Sixth, Seventh, and Ninth Circuits have all upheld the constitutionality of the mandatory consecutive sentences imposed

Where the legislature explicitly provides for the punishment, there is no constitutional issue. Indeed, the Supreme Court has held in several contexts that consecutive sentences do not pose a constitutional problem where the legislature has specifically provided for such sentences. See Whalen v. United States, 445 U.S. 684, 689 (1980) (noting that it is fully within the power of Congress to provide cumulative punishments, the only question was whether or not it had done so); Gore v. United States, 357 U.S. 386, 392 (1958) (holding that Congress clearly has the power to determine separate sentences for separate offenses); Carter v. McClaughry, 183 U.S. 365, 394 (1902) ("Cumulative sentences are not cumulative punishments, and a single sentence for several offenses, in excess of that prescribed for one offense, may be authorized by statute.").

In addition, there is no constitutional right to receive sentences concurrently; rather, the "specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures." Oregon v. Ice, 555 U.S. 160 (2009). In Arizona, the legislature has mandated consecutive sentences for dangerous crimes against

---

by this statute against an attack pursuant to the Eighth Amendment's prohibition of cruel and unusual punishment. See, e.g., United States v. Yousef, 327 F.3d 56, 163 (2d Cir. 2003) (rejecting an Eighth Amendment proportionality challenge to a prison term of 240 years plus a consecutive term of life imprisonment for offenses related to the 1993 bombing of the World Trade Center, including two mandatory consecutive 30-year terms); United States v. Walker, 473 F.3d 71, 82-83 (3d Cir. 2007) (holding 55-year mandatory consecutive sentence not violative of proportionality principle); United States v. Khan, 461 F.3d 477, 494-95 (4th Cir. 2006) (rejecting Eighth Amendment challenge to sentences of 120 months, 300 months, and life imprisonment imposed consecutively pursuant to § 924(c)(1)); United States v. Beverly, 369 F.3d 516, 536-37 (6th Cir. 2004) (rejecting proportionality challenge to a sentence of 71.5 years, mostly mandated by violations of § 924(c)(1), even though defendant had no felony history); United States v. Arrington, 159 F.3d 1069, 1073 (7th Cir. 1998) (finding Eighth Amendment did not prohibit 65-year mandatory consecutive sentence imposed for four violations of § 924(c)(1)); United States v. Hungerford, 465 F.3d 1113, 1118 (9th Cir. 2006) (rejecting argument that 155-year cumulative consecutive sentence for seven violations of § 924(c)(1) violated the Eighth Amendment); United States v. Parker, 241 F.3d 1114 (9th Cir. 2001) (rejecting Eighth Amendment challenge to 888-month sentence that included 780 months for four violations of § 924(c)(1) charged in the same indictment).

children.  See A.R.S. § 13-604.01 (2002).  In light of the legislature's determination, Petitioner's consecutive sentences are constitutional.[8]

**B.      Proportionality of the Sentence Imposed**

The Court next turns to the second idea embodied in Petitioner's claim – that a sentence of 10 years is grossly disproportionate to the crime of sexual exploitation of a minor.

The Eighth Amendment to the United States Constitution bars the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  Under the Eighth Amendment, the Supreme Court has noted that noncapital sentences are subject only to a "narrow proportionality principle" that prohibits sentences that are "grossly disproportionate" to the crime.  See Ewing, 538 U.S. at 23 (O'Connor, J., concurring in the judgment) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-997 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  For a sentence to violate the Eighth Amendment there must be a threshold showing of gross disproportionality through a comparison of "the gravity of the

------

[8] Subsumed within his argument regarding the consecutive nature of his sentences, Petitioner appears to adopt portions of Justice Berch's dissenting view criticizing Arizona's sentencing scheme.  Petitioner states in his reply that "the statute operates in a manner where facts regarding the size of his collection or the time spent acquiring the material is not relevant to guilt or sentencing.  If a defendant only possessed twenty images for even one minute he or she would be subject to the *same* penalty Petitioner received."  The essence of Petitioner's complaint is that the Arizona Legislature unwisely enacted a sentencing scheme that mandates a separate prison term for each individual visual image possessed, and that the nature of the offense should have instead prompted the legislature to impose a single prison term for possession of some unspecified number of images.  However, fixing the number of contraband images that may be punished within a single prison term is a subjective policy determination that the Supreme Court has found to rest "properly within the province of legislatures, not courts."  Rummel v. Estelle, 445 U.S. 263, 275-76 (1980) (rejecting defendant's challenge to the small amount of stolen money required to trigger application of Texas' recidivist statute).  See also State v. Jonas, 792 P.2d 705, 711 (Ariz. 1990) ("However, it is not the function of this court to engage in determining what minimum amount of marijuana need be involved in a 'serious' offense; that linedrawing function is properly one for the legislature.").  As the Supreme Court previously observed, "[t]his criticism is appropriately directed at the legislature, which has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme."  Ewing, 538 U.S. at 28.

offense [and] the harshness of the penalty." Id. at 28. If this comparison leads to an inference of gross disproportionality, the court can then conduct a comparative analysis by considering the sentences the state imposes on other crimes and the sentences other jurisdictions impose for the same crime. Id. at 23-24.

In comparing the gravity of the offense to the harshness of the penalty, courts grant substantial deference to the legislature and its policy judgments. The threshold inquiry is guided by several principles that include the primacy of the legislature in determining sentencing, the variety of legitimate penological schemes, the nature of the federal system, and the requirement that objective factors guide proportionality review. See id. at 23.

The Supreme Court cautions "federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." Hutto v. Davis, 454 U.S. 370, 374 (1982) (per curiam) (internal citations omitted). If the court finds that the state had a "reasonable basis" for believing that the law would further the goals of its criminal justice system of punishing violators and deterring future crimes, then the statutorily established prison sentence is not grossly disproportionate. See Ewing, 538 U.S. at 22-28.

Thus, at the outset the Court determines whether the Arizona legislature had a "reasonable basis" for believing that a 10-year sentence for possession of child pornography "advance[s] the goals of [its] criminal justice system in any substantial way." Id. at 28. The Supreme Court has specifically considered a state's interest in criminalizing child pornography stating, in pertinent part:

> It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' ... The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.

Osborne, 495 U.S. at 109 (quoting New York v. Ferber, 458 U.S. 747, 756-758 (1982)). The Court further noted that child pornography's "continued existence causes the child victims continuing harm by haunting the children in years to come" and that "evidence suggests that

pedophiles use child pornography to seduce other children into sexual activity." Id. at 111. Thus, the Court found it understandable that a state would try "to stamp out this vice at all levels in the distribution chain," and that criminalization encourages the destruction of such materials. Id. at 110-11.

As illustrated in Berger II, the Arizona legislature had a reasonable basis for enacting A.R.S. § 13-3553. See 134 P.3d at 383. The legislature was concerned with "a series of harms to child victims" and, in 1983, lawmakers included the amendment, which criminalized possession because it would "aid in prosecuting child molesters." Id. The legislature thereafter included possession of child pornography among one of a number of crimes targeted in A.R.S. § 13-604.01 for enhanced sentencing as "dangerous crimes against children." Id. The legislation provided for a "lengthy [period] of incarceration ... intended to punish and deter those predators who pose a direct and continuing threat to the children of Arizona." Id. (quoting Williams, 175 Ariz. at 102) (internal quotation marks omitted).

Given the United States Supreme Court's acknowledgment of a state interest in criminalizing child pornography and the legislative history of the Arizona statutes, this Court concludes that the Arizona legislature had a reasonable basis for believing that a 10-year sentence would advance the goals of Arizona's criminal justice system.

The Court next analyzes the proportionality between Petitioner's crime and his sentence. In so doing, the Court notes (as other courts taking up this same issue have identified) that there have only been three times in the last century when the Supreme Court has invalidated a sentence. The first was Weems v. United States, 217 U.S. 349, 382 (1910), where the Court invalidated the punishment of *cadena temporal*[9] for the crime of falsifying a public record. Seventy-three years later, in Solem v. Helm, the Court invalidated under the Eighth Amendment a sentence of life imprisonment without the possibility of parole imposed

---

[9] *Cadena temporal* is an old Spanish form of punishment which required "those sentenced ... [to] labor for the benefit of the state. They shall always carry a chain at the ankle, hanging from the wrists; they shall be employed at hard and painful labor, and shall receive no assistance whatsoever from without the institution." Weems, 217 U.S. at 364.

under South Dakota law against a nonviolent recidivist whose crime was writing a "no account" check with the intent to defraud. See 463 U.S. at 281. The Court placed significant weight on the lack of violence in Helm's criminal history and the relatively minor nature of the crime in deciding that his sentence was grossly disproportionate. See id. at 297. Finally, in May of 2010, the Court invalidated a sentence of life without parole for a recidivist offender who committed a non-homicide crime as a juvenile. See Graham v. Florida, ___ U.S. ___, 130 S.Ct. 2011, 2034 (2010).

In contrast to these cases, in Rummel v. Estelle, the petitioner sought habeas relief for receiving a life sentence with possibility of parole for a third felony conviction – "obtaining $120.75 by false pretenses." 445 U.S. at 266. The Supreme Court affirmed his sentence. See id. at 285. In Hutto v. Davis, the petitioner sought habeas relief for receiving consecutive 20-year sentences for possessing nine ounces of marijuana. See 454 U.S. at 371. The Court affirmed his sentences. See id. at 373. In Harmelin v. Michigan, the Court affirmed a sentence of life imprisonment without possibility of parole for a first time offender convicted of possessing 672 grams of cocaine. See 501 U.S. at 961. In reaching this conclusion, the Court noted its concern with the threat posed to individuals as well as society as a result of the escalating use of controlled substances. Id. at 1003 (quoting United States v. Mendenhall, 446 U.S. 544, 561 (1980) (Powell, J., concurring in part and concurring in the judgment)). Finally, in Ewing v. California, the Court affirmed a sentence of 25 years to life pursuant to California's "three strikes" law for a man who stole three golf clubs valued at just under $1200. See 538 U.S. at 30-31.

Here, as with the aforementioned cases, Petitioner's sentence does not support an inference of gross disproportionality. The record before the Court demonstrates that Petitioner's sentence is "amply supported" by well-documented evidence (which the Court need not repeat) establishing a "long, serious" pursuit of illegal depictions and is "justified by the State's public-safety interest" in deterring the production, as well as, the possession of child pornography. Ewing, 538 U.S. at 29-30. Petitioner's crimes were precisely the type of criminal acts the legislature intended to punish. See Berger II, 79 P.2d at 72.

Petitioner, however, cites United States v. Meiners, in an attempt to "highlight" the disproportionality of his sentence. Specifically, he claims that unlike the defendant in Meiners, he did not purchase, distribute, or advertize child pornography. Rather, echoing Justice Berch's sentiments in her dissent, Petitioner asserts that he merely possessed "the pornography in the privacy of his own home" and, as such, "there is no evidence [Petitioner's] actions affected society."[10] The Court disagrees.

Courts have regularly recognized three distinct harms, although by no means exhaustive, visited upon those who were abused in child pornography as a consequence of the later distribution or possession of such images. See Norris, 159 F.3d at 929-31; see also United States v. Planck, 493 F.3d 501, 505 (5th Cir. 2007) (recognizing that as a consequence of the possession and distribution of child pornography, "a child may be victimized in three distinct ways"). For purposes of this inquiry, the Court focuses on the third form of harm caused by those possessing or distributing child pornography – namely, that "the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials."[11] Planck, 493 F.3d at 505. See also United States v. Forrest, 429 F.3d 73, 79 (4th Cir. 2005) (quoting the Child Pornography Prevention Act of 1996) ("[P]rohibiting the possession and viewing of child pornography will ... help[ ] to protect the victims of child pornography and to *eliminate the market* for the exploitative use of children.") (emphasis in original). Contrary to Petitioner's

---

[10]   In Meiners, the Ninth Circuit upheld a 15-year mandatory minimum sentence imposed upon a defendant who pled guilty to four counts of advertisement of child pornography, four counts of distribution of child pornography, and one count of possession of child pornography against an Eighth Amendment challenge. The Ninth Circuit focused its analysis on the fact that advertising and distributing child pornography are significant crimes because they "threaten to cause grave harm to society." 485 F.3d at 1213.

[11]   The first two forms of harm suggest that: (1) the simple fact that images have been disseminated perpetuates the abuse initiated by the producer of the materials – "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation," Ferber, 458 U.S. at 759, and (2) the mere existence of child pornography represents an invasion of the privacy of the child depicted.

beliefs, the interconnected relationship between the producers of child pornography and its consumers is well-established.  In its factual findings underlying the Child Pornography Prevention Act of 1996,

> Congress [] described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry.  The underlying point, however, is that there is no sense in distinguishing ... between the producers and the consumers of child pornography.  Neither could exist without the other.  The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous and direct abuse and victimization of child subjects.

Norris, 159 F.3d at 930.  Thus, the harm to society caused by possessors of child pornography in creating and sustaining a market for such material is clear.  See Osborne, 495 U.S. at 110 ("[T]he advertising and selling of child pornography provide[s] an economic motive for and are thus an integral part of the production of [child pornography].").

The harm of creating an economic incentive to produce child pornography, however, need not only be societal, and can cause direct injury to the victims of such abuse.  For example, it has been established that "[c]hild pornography is often used as part of a method of seducing child victims.  A child who is reluctant to engage in sexual activity with an adult or to pose for sexually explicit photos can sometimes be convinced by viewing other children having 'fun' participating in the activity."  Osborne, 495 U.S. at 111 (quoting 1 Attorney General's Commission on Pornography, Final Report 649 (1986)).  Further, a consumer of child pornography may encourage a particular (or potential) victim's sexual abuse by communicating with, and providing an incentive to, the producer of child pornography to commit another act of sexual abuse upon a certain victim.  See United States v. Church, 701 F.Supp.2d 814, 822 (W.D. Va 2010) (quoting *Child Pornography and Sexual Exploitation of Children Online*, at 21-22).  Lastly, even if an end-user of child pornography was able to somehow acquire such images in a manner that does not encourage production or distribution, the possession of such images would still constitute an invasion of the victim's right to privacy.  Therefore, to the extent Petitioner attempts to minimize the nature of his crimes by contending that his mere possession did not affect society, his argument must fail.

1   In sum, on habeas review, this Court is limited to consideration of whether the state

2   courts have misapplied "clearly established Federal law, as determined by the Supreme

3   Court." Having examined the intent of the legislature, as well as, and relevant Eighth

4   Amendment jurisprudence, no such finding can be made in this case. As Petitioner notes,

5   the State of Arizona has chosen to implement one of the harshest punishments for possessors

6   of child pornography in the nation. However, the fact that Arizona seeks to severely penalize

7   possessors of child pornography, a category of criminals the Supreme Court has noted are

8   likely to be child molesters themselves, comports with the Federal Constitution. Although

9   his sentence is severe, it fails to give rise to an inference of gross disproportionality.

10  Courts need not consider an intra- or inter-jurisdictional analysis of comparable crimes

11  and punishments unless there has been an initial inference of gross disproportionality. See

12  Harmelin, 501 U.S. at 1005. When the crime in question is a serious one, such an analysis

13  is especially unnecessary. See id. at 1004. Since the Court has not found an inference of

14  gross disproportionality and Petitioner's crimes are serious, this Court concludes it need not

15  engage in a comparable analysis.

16  Therefore, the Court finds that the Arizona Supreme Court's determination that

17  Petitioner's 20 consecutive, 10-year sentences for possessing 20 images of child pornography

18  was constitutional is not contrary to nor an unreasonable application of federal law. The

19  Court will recommend that Petitioner's Eighth Amendment claim be denied.

20  **CONCLUSION**

21  Having determined that Ground One as set forth in Petitioner's Petition for Writ of

22  Habeas Corpus and Memorandum in Support thereof fails on the merits, the Court will

23  recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed

24  with prejudice.

25  **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of

26  Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH**

27  **PREJUDICE**;

28

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 11th day of July, 2011.

*Michelle H. Burns*

Michelle H. Burns
United States Magistrate Judge

- 25 -